Ora WHITTLE, Appellant,

v.

Michael WEBER, Appellee.

No. S–13418.

Supreme Court of Alaska.

Dec. 3, 2010.

Ora L. Whittle, pro se, Fairbanks, Appellant.

Zane D. Wilson, Cook Schuhmann & Groseclose, Inc., Fairbanks, for Appellee.

Before: FABE, CHRISTEN, and STOWERS, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Ora Whittle and Michael Weber are neighbors. Weber filed this lawsuit against Whittle, asserting that Whittle's use of his property is a nuisance, violates subdivision covenants, and violates borough ordinances. As part of discovery, Weber requested an inspection of Whittle's property, and the superior court ordered Whittle to allow a limited inspection. For about two months, Weber and Whittle disagreed on the date Weber would be allowed access onto Whittle's property. Weber then moved to hold Whittle in contempt, and Whittle withdrew his consent to the inspection altogether. As a sanction for failing to comply with its discovery order, the superior court entered judgment against Whittle.

We affirm the superior court's order directing Whittle to allow a limited inspection of his property as part of discovery. But litigation-ending sanctions should be used only in extreme circumstances and were not an appropriate remedy here. Because it was

unclear that Whittle was refusing to obey the superior court's order and that he would not obey the order in the future, it was an abuse of discretion for the superior court to enter judgment against Whittle. Thus we reverse the superior court's judgment entered against Whittle and remand for further proceedings consistent with this opinion.

## II. FACTS AND PROCEEDINGS

In 1984 Ora Whittle[1] moved to the Green Acres Subdivision in Fairbanks; in 1991 Michael Weber moved to the adjoining tract of land. In June 2007 Weber filed a complaint against Whittle, alleging that Whittle was "maintaining a nuisance" and violating subdivision covenants by "maintaining a junkyard on his property which ... is unreasonably obnoxious and offensive to his residential neighbors." Weber requested injunctions prohibiting Whittle "from hauling additional junk onto his property" and directing him "to abate the nuisance." Whittle responded that the subdivision covenants had been violated regularly by other residents since Whittle moved there in 1984.

In November 2007 Whittle filed a motion to dismiss Weber's complaint, arguing it was barred by relevant statutes of limitations and the doctrine of laches. Weber opposed the motion, characterizing the situation as an ongoing nuisance and asserting that he had tried and failed to work the problem out with Whittle. In February 2008 Whittle moved to have his neighbors and Weber's wife joined as plaintiffs in the lawsuit, arguing that Weber was acting as a representative for all of them and that Whittle "should be able to defend [himself] from all these people's complaints at once, instead of having to go through several different proceedings." Weber opposed the motion.

In March 2008 Superior Court Judge Randy M. Olsen issued an order denying Whittle's motion to dismiss, finding that "Weber's claim for an ongoing nuisance is not barred by the statute of limitations." The superior

court also denied Whittle's motion to join his other neighbors as plaintiffs.

In April 2008 Weber requested permission from Whittle to enter his land "for purposes of conducting an inspection of the items placed upon your land to determine whether or not hazardous substances or substances of any other nature exist[ ] that could present a threat to the neighbors surrounding your property and/or the ground water beneath their property." Whittle denied the request, invoking his constitutional rights and arguing that Weber's request was "vague, ambiguous, & unfounded, with no adequate cause." Weber then filed a motion to compel entry upon Whittle's land. Whittle opposed the motion and requested a hearing to determine the reason for the inspection request and to establish parameters for the inspection.

In an order dated July 30, 2008 and mailed August 5, the superior court granted Weber's motion to compel entry and ordered Whittle to "provide a mutually agreeable date for the conducting of an inspection within 30 days." The order specified that "[t]he inspection will not extend to inside any residence." On August 6, one day after the order was mailed, Weber's lawyer drafted a letter to Whittle asking Whittle to "advise as soon as possible when we can conduct the inspection." On August 19 Whittle filed a motion for reconsideration, which the superior court eventually denied. On August 18 Weber's lawyer drafted a letter to Whittle asking to conduct an inspection of his property on August 24. According to Whittle, he did not receive the letter until August 25.

On September 2 Whittle filed a document with the court agreeing to allow inspection of his property "on November 14th through November 25th 2008 (excluding weekends & holidays), for one day" and requesting "the date, time period, name of [the expert who would be coming], & the certification of that expert." On September 5 Weber's lawyer drafted a letter to Whittle asking to conduct

---

1. Ora Whittle died while this appeal was pending. His estate substituted for Whittle pursuant to Appellate Rule 516. We reach the merits of this appeal because attorney's fees are at issue. *See, e.g., Smallwood v. Cent. Peninsula Gen. Hosp., Inc.,* 227 P.3d 457, 460–61 (Alaska 2010)

(evaluating a claim on the merits after plaintiff's death because "this court will hear an otherwise moot case to determine who is the prevailing party for purposes of awarding attorneys' fees") (internal quotation marks omitted).

an investigation the week of October 20. On September 16 Whittle sent a letter to Weber's lawyer explaining (1) that he had not received the lawyer's August letter until the date requested for an inspection had already passed and (2) that he would allow an inspection for one day between November 14 through 25.

On October 1 Weber filed a motion requesting that the court order Whittle to allow an inspection during the week of October 20 or hold Whittle in contempt if he refused. Weber's lawyer also noted that the time period Whittle had previously offered for the inspection would fall after the extended deadline for expert reports. On October 14 Whittle filed an opposition to Weber's motion, asserting that he had fully complied with the court's order by offering to allow an inspection in November but that he now "withdraws all offers to an agreement with [Weber's lawyer]" because Whittle "ha[d] tried to reach an agreement with the opposing party, but it was to no avail." On November 7 the superior court held a hearing on Weber's contempt motion.

At the contempt hearing, Weber's lawyer argued the importance of the inspection to their case and the prejudice his client had already suffered as a result of the delay. Whittle responded that he intended to "stand on [his] constitutional rights" and expressed his view that the United States Constitution and Alaska Constitution protected him against "inspections and that and seizures and searches" of his property without evidence of some inappropriate activity. The superior court declined to hold Whittle in contempt for his alleged noncompliance with the July 30 written order, but then orally ordered him to allow an inspection of his property within two weeks on penalty of having judgment entered against him. Whittle repeated that he would "stand on" his constitutional rights, and added: "And if [the court has] the authority to write a search and seizure warrant without my permission, then I have no control over that. But I will not agree to let them on my property, so...." Apparently viewing Whittle's statement as a refusal to ever comply with the court's discovery order, the court directed Weber's lawyer to draft a final judgment order.

On December 2 Weber's lawyer submitted a draft order. On December 16 Whittle filed an objection to the entry of judgment against him. On December 23 the superior court entered final judgment against Whittle, ordering him "to bring his property in compliance with" subdivision covenants and "to abate the nuisance his property presents" to Weber. The superior court gave Whittle until July 15, 2009 to comply with the order and provided that, if he did not, Weber and those hired by Weber would be permitted to enter his property "for the purposes of removing and disposing of the personal items stored thereon at Mr. Whittle's expense." Weber also filed a motion for costs and enhanced attorney's fees of 50 percent of actual fees; the superior court awarded Weber costs and 20 percent of actual attorney's fees.

## III. STANDARD OF REVIEW

We review a trial court's decision to impose sanctions for discovery violations for abuse of discretion.[2] This discretion is limited, however, "when the effect of the sanction [the trial court] selects is to impose liability on the offending party, establish the outcome of or preclude evidence on a central issue, or end the litigation entirely."[3] Because "litigation ending sanctions are disfavored," we limit trial courts' "discretion to impose such sanctions ... to extreme situations."[4]

We review a trial court's "determination regarding the applicable statute of limitations" de novo.[5] We review a trial court's decision to permit or deny a defense based on the doctrine of laches for abuse of discretion and will not overturn the decision unless we have "a definite and firm convic-

**2.** *Underwriters at Lloyd's London v. The Narrows,* 846 P.2d 118, 119 (Alaska 1993).

**3.** *Sykes v. Melba Creek Mining, Inc.,* 952 P.2d 1164, 1169 (Alaska 1998).

**4.** *Hughes v. Bobich,* 875 P.2d 749, 752 (Alaska 1994).

**5.** *Smallwood v. Cent. Peninsula Gen. Hosp.,* 151 P.3d 319, 322–23 (Alaska 2006).

**212**

tion that a mistake has been committed." [6] Finally, we review a trial court's procedural decisions for abuse of discretion[7] and a trial court's interpretation of the civil rules de novo.[8]

## IV. DISCUSSION

We begin with the central question in this appeal: whether the superior court's entry of judgment against Whittle as a discovery sanction for not allowing an inspection of his property was error. In order to decide this issue, we first address the superior court's order directing Whittle to allow an inspection of his property. We then examine Whittle's alleged violations of the superior court's discovery orders and the court's imposition of litigation-ending sanctions. We also briefly consider Whittle's other points on appeal.

### A. Allowing An Inspection Of Whittle's Property

Under Alaska Civil Rule 34(a)

[a]ny party may serve on any other party a request . . . to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon. . . .

Any request made pursuant to Civil Rule 34 must "set forth, either by individual item or by category, the items to be inspected, and describe each with reasonable particularity. The request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts." [9]

We have explained that "[i]n general, the civil rules are committed to a system of liberal pretrial discovery." [10] A court may, however, limit discovery under certain circumstances.

■ Whittle argues that the superior court's order permitting Weber to conduct an inspection of Whittle's property violated his constitutional rights.[11] We consider whether the right to privacy might offer Whittle any protection from the discovery order.

We have considered at least one challenge to a discovery order on right-to-privacy grounds. In *Jones v. Jennings,* involving a lawsuit filed against two police officers, we affirmed a discovery order requiring production of one of the officer's personnel records and records of citizen complaints filed against him.[12] On the officer's behalf, the Municipality of Anchorage argued that this discovery request was "unnecessarily intrusive into the privacy of the officers involved." [13] Noting that the Alaska Constitution expressly protects Alaskans' right to privacy but that "[t]he right to privacy is not absolute," we applied the following three-part inquiry, adopted from a Colorado Supreme Court case, to determine whether the discovery order was appropriate:

(1) does the party seeking to come within the protection of the right to confidentiality have a legitimate expectation that the materials or information will not be disclosed?

(2) is disclosure nonetheless required to serve a compelling state interest?

(3) if so, will the necessary disclosure occur in that manner which is least intrusive with respect to the right to confidentiality? [14]

6. *Young v. Williams,* 583 P.2d 201, 204–05 (Alaska 1978).

7. *Walker v. Walker,* 151 P.3d 444, 447 (Alaska 2007).

8. *Mikesell v. Waterman,* 197 P.3d 184, 186 (Alaska 2008).

9. Alaska R. Civ. P. 34(b).

10. *Jones v. Jennings,* 788 P.2d 732, 735 (Alaska 1990).

11. Though Whittle's focus on the Fourth Amendment is misplaced (because it does not apply to

searches or seizures conducted by a private party, *see Schaffer v. State,* 988 P.2d 610, 612 (Alaska App.1999)), we address the thrust of his argument, which is simply that he is constitutionally protected from unreasonable inspections of his property.

12. 788 P.2d at 733, 737–39.

13. *Id.* at 737.

14. *Id.* at 738 (quoting *Martinelli v. District Court,* 199 Colo. 163, 612 P.2d 1083, 1091 (1980)).

We concluded that the officer did have a legitimate expectation that the information would not be disclosed but then emphasized that disclosure served the compelling interest of "preserving democratic values and fostering the public's trust in those charged with enforcing the law." [15] We also noted that the trial court made the inspection as minimally invasive as possible by protecting the officer's financial information and family's name and address and by conducting an in camera inspection of the requested documents.[16] Thus, we affirmed the trial court's order.

Other jurisdictions have used similar balancing tests and considered similar factors when reviewing discovery requests for entry onto private property. Overall, to determine whether an inspection is appropriate, courts "must balance the respective interests by weighing the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." [17] Most courts focus on the second *Jones* factor: the "compelling interest" element. To determine whether a compelling interest exists, courts scrutinize the relevance of the proposed inspection to the issue in the legal action. The Kentucky Supreme Court, looking to federal courts' practices, observed that "[i]n each case, the place to be inspected is somehow 'at issue' in the underlying law suit." [18] Thus, other jurisdictions have concluded that the property or item to be inspected must be directly connected with the main issue of the legal action; some have determined that this "nexus" must appear on the face of the discovery order.[19] Besides focusing on the nexus between the location and the legal cause of action, courts may also consider additional factors that connect the inspection to the lawsuit; for example, whether a legal action has begun,[20] or whether the inspection is necessary (*i.e.*, the information cannot be obtained through other avenues).[21]

Based on our decision in *Jones v. Jennings* and the approaches of other jurisdictions to this question, we conclude that the superior court did not abuse its discretion in ordering Whittle to allow a limited inspection of his property as part of discovery. First, legal action had begun in this case, and that action directly concerned the property to be inspected pursuant to the superior court's discovery order. Second, we note that, in line with Civil Rule 34's requirements, Weber's request was specific about what information he seeks: he wants to know whether "hazardous substances or substances of any other nature exist[ ] that could present a threat to the neighbors surrounding [Whittle's] property and/or the ground water beneath their property." Moreover, the superior court endeavored to protect the privacy of Whittle's home by explicitly excluding "any residence" from the inspection order.[22]

---

15. *Id.* at 738.

16. *Id.* at 739.

17. *Welzel v. Bernstein*, 233 F.R.D. 185, 186 (D.D.C.2005) (internal quotation marks omitted); *see also DUSA Pharms., Inc. v. New England Compounding Pharmacy, Inc.*, 232 F.R.D. 153, 154 (D.Mass.2005) (denying motion to compel inspection where "any benefit from the inspection ... is outweighed by the burdens that such inspection will impose").

18. *Wal–Mart Stores, Inc. v. Dickinson*, 29 S.W.3d 796, 802 (Ky.2000); *see also Belcher v. Bassett Furniture Industrs., Inc.*, 588 F.2d 904, 910 (4th Cir.1978) ("Most cases involving on-site inspections concern a given object on the premises which is the subject matter of the action...."); *Welzel*, 233 F.R.D. at 186 ("In cases in which a site inspection has been allowed, the rationale has often been because the specific location relates to the subject matter of the cause of action.").

19. *See Wal–Mart Stores, Inc.*, 29 S.W.3d at 802 (requiring a "nexus between the premises to be inspected and the underlying cause of action" and that "this nexus must appear on the face of the order").

20. *See, e.g., Lake Charles Harbor & Terminal Dist. v. Phoenix Dev. Co.*, 624 So.2d 972, 974 (La.App. 1993) (holding that trial court lacked authority to allow entry on land before suit was filed).

21. *See, e.g., DUSA Pharms.*, 232 F.R.D. at 154 (denying motion to compel entry where "the defendant [had] offered plaintiffs access to its premises under reasonable terms" and "alternative and reasonably adequate methods of discovery" were available).

22. We view this limitation as important not only because of the third *Jones* factor (least intrusive means of inspection) but because we have recognized "the distinctive nature of the home as a place where the individual's privacy receives spe-

## B. Entering Judgment Against Whittle As A Discovery Sanction

Alaska Civil Rule 37 "affords trial courts broad power to enforce discovery orders by the use of sanctions."[23] In relevant part, Civil Rule 37(b)(2) provides:

> If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> . . . .
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]

We have cautioned, however, that only extreme circumstances warrant use of litigation-ending sanctions:

> [S]ince the law disfavors litigation ending sanctions, the superior court has the discretion to impose such sanctions only in extreme circumstances. We have held that a party should not be barred from his or her day in court where an alternative remedy would suffice to make the adverse party whole.[24]

To order litigation-ending sanctions for discovery violations, a trial court must find that (1) the noncompliant party willfully violated the order at issue, (2) nondisclosure of that information will prejudice the opposing party, and (3) the dismissal is sufficiently related to the violation at issue.[25] In addition, before a trial court may impose litigation-ending sanctions for discovery violations, "the record must clearly indicate a reasonable exploration of possible and meaningful alternatives to dismissal."[26]

In its final judgment, the superior court concluded that Whittle's "open court refusal to allow [Weber] or his experts to enter upon his property is willful." The superior court also stated that Whittle "has been given every opportunity to correct this refusal, but fails and refuses to do so." Whittle maintains on appeal that he complied with the superior court's original written order and that the superior court itself acknowledged this by declining to find him in contempt. He also argues that if the superior court had ordered the inspection during the hearing, he "would [have] had to comply." He insists that he could not "voluntarily agree" to Weber's inspection of his property, however, because he believes an inspection would violate his constitutional rights; therefore, "asking [him] to agree to it would be asking him to lie to the court."

To address whether sanctions were appropriate here, we must initially determine whether Whittle willfully failed to obey a discovery order. Deciding whether Whittle failed to comply requires us to examine two orders, one written and one oral, regarding the inspection of Whittle's property.

### 1. The superior court's written order

■ The written order, which was dated July 30, 2008 but not mailed until August 5, directed Whittle to "provide a mutually agreeable date for the conducting of an inspection within 30 days from the date of this order." On August 19 Whittle filed a motion for reconsideration. On September 2, before the superior court had ruled on that motion, Whittle agreed to an inspection of his property, informing Weber that he would allow the inspection "on November 14th through No-

---

cial protection" and explained that "[t]he privacy amendment to the Alaska Constitution was intended to give recognition and protection to the home." *Ravin v. State*, 537 P.2d 494, 503–04 (Alaska 1975). We have cautioned, however, that "[w]e do not mean ... a person may do anything at anytime as long as the activity takes place within a person's home." *Id.* at 504. Rather, the right to privacy in one's home "must yield when it interferes in a serious manner with the health, safety, rights and privileges of others or with the public welfare." *Id.*

**23.** *Hughes v. Bobich*, 875 P.2d 749, 752 (Alaska 1994).

**24.** *Sandstrom & Sons, Inc. v. State*, 843 P.2d 645, 647 (Alaska 1992) (internal citations and quotation marks omitted).

**25.** *See* Alaska R. Civ. P. 37(b)(3)(A)-(C); *Hughes*, 875 P.2d at 752–53.

**26.** *Hughes*, 875 P.2d at 753; *see also* Alaska R. Civ. P. 37(b)(3)(D).

vember 25th 2008 (excluding weekends & holidays), for one day" and requesting that Weber provide "the date, time period, name of [the expert who would be coming], & the certification of that expert." The question before us, then, is whether Whittle complied with the superior court's order by providing within 30 days of the court's written order acceptable dates for the inspection or whether the order required him to schedule the inspection for a date that fell within the 30–day period.

In his opposition to Weber's motion to hold him in contempt, Whittle asserted that he "has tried to provide a mutually agreeable date for the conducting of an inspection, & it has been done within the 30 days specified in the court's order." He argued that "[i]f the court would have meant to have the inspection within the 30 days period of time, then it would surely have said just that." During the contempt hearing, Whittle repeated that he understood "within 30 days" to refer to the act of providing a date for the inspection and further explained, "I [have] done it way—exactly the way that I understood it." Weber's lawyer explained that he understood "within 30 days" to refer to the date of the inspection itself and argued that his was the only interpretation consistent with the September 29 deadline for expert reports. As Weber acknowledged in a previous court filing, however, the language of the order, on its face, permits *both* Whittle's and Weber's interpretations. The superior court declined to hold Whittle in contempt, presumably because it was persuaded that Whittle had an honest, alternative interpretation of the order. Thus, Whittle did not willfully fail to comply with the superior court's written order.

### 2. The superior court's oral order

■ The superior court also issued an oral order at the contempt hearing. Early in the hearing, Whittle expressed his view that the United States Constitution and the Alaska Constitution protected him against "inspections and that and seizures and searches" of his property without evidence of some inappropriate activity. The superior court tried to explain that Whittle has those protections

only against the government, not against a private individual, and then returned to Whittle's previous statement that he would allow an inspection in November. Whittle reminded the superior court that he had withdrawn that offer when Weber moved to hold him in contempt. Then, after declining to hold Whittle in contempt for violating discovery, the superior court had the following exchange with Whittle:

C: Mr. Whittle, what I am going to order is that you make your property available for the inspection and ... if it doesn't get done within two weeks, you make it available. I don't care if you have anybody there, but you have to let their expert on ... if you don't and you stand on your right to refuse to let that happen, then I will say that they automatically win that claim. Because that's the way—that is going to be sanction.

. . . .

W: Anyway, I'm going to stand on my constitutional rights.

C: Okay.

W: *And if you have the authority to write a search and seizure warrant without my permission, then I have no control over that. But I will not agree to let them on my property, so . . .*

C: Okay. With that—if that's your position, then, I am going to enter the order that Mr. Weber has won that issue.

(Emphasis added.)

We consider two points as to whether Whittle's response to the superior court's oral order rises to the level of willful noncompliance with a discovery order. First, Whittle argued at the contempt hearing and maintains on appeal that he believed the superior court did not have the authority to order an inspection of his property without first having some proof of inappropriate activity, and that he believed *agreeing* to an inspection would allow the court to circumvent that constitutional requirement. Consistent with this belief, after Weber moved to hold Whittle in contempt, Whittle wanted Weber to present proof of inappropriate activity and withdrew his agreement to the inspection of his property. But Whittle's remarks seemed to recognize that if the trial court had the

"authority to write a search and seizure warrant without [Whittle's] permission, then [Whittle had] no control over that." Although Whittle maintained that he could not "agree" to let Weber on his property, the exchange, read as a whole, is certainly susceptible of more than one interpretation. Taken as a whole, Whittle's actions could be interpreted as indicating that he would only allow the inspection if ordered by the court to do so over his objection.

When Whittle indicated to the superior court during the contempt hearing that he would not *allow* an inspection of his property, the court interpreted this statement to mean that Whittle would not comply with any further discovery orders and assumed that Whittle would not change his mind. We have upheld findings of willful noncompliance where the plaintiff "made no effort to comply" with the superior court's discovery orders and had demonstrated "no intention of ever complying with the court's orders." [27] In this case, by contrast, Whittle did make an initial effort to comply with the superior court's written order by proposing inspection dates. Moreover, it does not seem clear from the contempt hearing exchange that Whittle had no intention of complying with the court's order; in fact, Whittle seemed to be waiting for the superior court to order the inspection over his objection. In any event, it was incumbent on the superior court to clarify whether Whittle would comply with the court's inspection order if entered over his objection before imposing any sanctions, much less litigation-ending sanctions. We therefore reverse the sanction and vacate the judgment entered against Whittle.

## C. Alleged Errors By The Superior Court In Not Barring This Case

We briefly consider Whittle's contentions on appeal that the superior court committed error in refusing to bar this case under relevant statutes of limitations and the doctrine of laches. We conclude that the superior court did not err in denying Whittle's motion to dismiss the suit on these grounds.

### 1. Statute of limitations

■ On November 14, 2007, Whittle filed a motion to dismiss Weber's lawsuit on the ground that it was barred by the statute of limitations for contract actions and by the doctrine of laches. Weber responded that his claim was for ongoing nuisance and was therefore not time-barred. The superior court denied Whittle's motion to dismiss, concluding that Weber's nuisance claim was not barred by the statute of limitations.[28] On appeal, Whittle repeats that statutes of limitations bar Weber's nuisance and violation of covenants claims against him.

■ We have explained that "[u]nder theories of continuing trespass or nuisance, each harmful act constitutes a new cause of action for statute of limitations purposes." [29] A nuisance is continuing if it "can be discontinued or abated"; classic examples include "an ongoing or repeated disturbance, such as a disturbance caused by noise, vibration or foul odor, that may vary over time." [30] As Weber points out, his action is for *ongoing* nuisance and *ongoing* violations. Weber's complaint asserts that the way Whittle cur-

---

27. *DeNardo v. ABC Inc. RVs Motorhomes*, 51 P.3d 919, 923–24 (Alaska 2002); *Hart v. Wolff*, 489 P.2d 114, 118 (Alaska 1971) (holding plaintiff willfully refused to obey discovery order where he admitted making no efforts to comply during the 30 days the trial court gave him).

28. Weber characterized his lawsuit only as a tort suit and did not separately discuss his contract claim for violation of covenants or separately respond to Whittle's argument that the suit violated the statute of limitations for contract suits. Perhaps following this lead, the superior court did not address the contract claim.

29. *Oaksmith v. Brusich*, 774 P.2d 191, 200 n. 10 (Alaska 1989); *see also Van Deusen v. Seavey*, 53

P.3d 596, 600 n. 11 (Alaska 2002) (concluding that a nuisance claim was not subject to the relevant statute of limitations where the court held that it was temporary and abatable rather than permanent); 58 Am.Jur.2d *Nuisances* § 26 ("Every continuance of the nuisance is a fresh nuisance for which a new action will lie.").

30. *Bartleson v. United States*, 96 F.3d 1270, 1275 (9th Cir.1996) (internal citations and quotation marks omitted); *see also Van Deusen*, 53 P.3d at 600 (labeling an alleged nuisance caused by seasonally-located barking dogs "temporary" and "abatable" because it was not "relatively enduring" and was "likely to be abated, either voluntarily or by an order of the court").

rently maintains his property is violating subdivision covenants and is a nuisance. In addition, Weber's affidavit asserts that the situation giving rise to his complaint "is not static" and that Whittle "continues to haul junk/garbage at the rate of one to two trailer loads per day." Weber's complaint and affidavit support his contention that his claims are for continuing nuisance, and so are not barred by relevant statutes of limitations.

### 2. Doctrine of laches

■ Whittle also argues that Weber's lawsuit should have been barred by the doctrine of laches. Weber responds that "[i]t was only after [he] was unable to obtain an amicable resolution through his neighbors and contact with the defendant that this lawsuit was filed." In its order denying Whittle's motion to dismiss, the superior court did not directly address this issue but presumably concluded that this aspect of Whittle's argument was also unavailing.

■ The doctrine of laches "creates an equitable defense when a party delays asserting a claim for an unconscionable period. To bar a claim under laches, a court must find both an unreasonable delay in seeking relief and resulting prejudice to the defendant."[31] We have previously declined to infer prejudice from delay and have rejected a defendant's defense of laches where he "ha[d] not attempted to show that he was materially prejudiced by such delay."[32] Here, Whittle has not indicated what prejudice he may have suffered as a result of Weber's delay in bringing this lawsuit. For that reason, it was not error for the superior court to reject Whittle's laches defense.

### D. Other Alleged Errors

Whittle makes a number of other claims on appeal. Among others, Whittle alleges that the superior court should not have accepted Weber's late-filed disclosures of the areas of expertise in which Weber intended to call experts and erroneously denied Whittle's mo-

tion to join his other neighbors as plaintiffs. Because Whittle died during the appellate proceeding,[33] it is unclear whether this litigation will continue beyond this appeal. Thus, we leave it to the superior court to determine whether these issues have become moot.

## V. CONCLUSION

Because the superior court did not abuse its discretion by ordering Whittle to allow a limited inspection of his property as part of discovery, we AFFIRM the superior court's discovery order. The superior court's entry of judgment against Whittle as a discovery sanction, however, was error. We REVERSE and VACATE the entry of judgment against Whittle and REMAND to the superior court for further proceedings consistent with this opinion.

CARPENETI, Chief Justice, and WINFREE, Justice, not participating.

---

**31.** *State, Dep't of Commerce & Econ. Dev., Div. of Ins. v. Schnell,* 8 P.3d 351, 358–59 (Alaska 2000) (internal citations and quotation marks omitted).

**32.** *Young v. Williams,* 583 P.2d 201, 204–05 (Alaska 1978).

**33.** *See supra* note 1.