*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| DANIEL L. BURKE and LUISA E. BURKE, | ) ) ) |
| | )   Supreme Court No. S-14202 |
| Appellants, | ) |
| | )   Superior Court No. 3AN-09-05610 CI |
| v. | ) |
| | )   O P I N I O N |
| NESAVOU MAKA, FUNGANI A. MAKA, and ALBERTA F. MAKA, | ) ) |
| | )   No. 6759 - March 15, 2013 |
| Appellees. | ) ) ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Todd J. Timmermans, Hartig Rhodes LLC, Anchorage, for Appellants. James M. Gorski, Hughes Gorski Seedorf Odsen & Tervooren, LLC, Anchorage, for Appellees.

Before: Fabe, Chief Justice, Carpeneti, Winfree, and Stowers, Justices.

WINFREE, Justice.

## I.    INTRODUCTION

Daniel and Luisa Burke (the Burkes) own a home in Anchorage. Nesavou Maka, Fungani Maka, and Alberta Maka (the Makas) are the Burkes' next-door neighbors. The Burkes and the Makas have a common driveway approximately 20 feet wide over a shared property line. The Burkes wanted to build a fence down the middle

of this driveway. However, a preexisting covenant to provide access granted the two lots' owners reciprocal access to the common driveway.

The Burkes filed suit to quiet title, seeking a declaratory judgment that the covenant was invalid and gave the Makas no legal right to use the Burkes' portion of the driveway. The Makas asserted several affirmative defenses, including laches. Following a bench trial, the superior court found the Burkes used the driveway as shared; the Burkes were aware the Makas believed the driveway to be shared; and the Burkes caused the Makas prejudice by failing to object to the Makas' visible use between 2004 and 2009. Based on those findings, the superior court ruled that laches barred the Burkes from challenging the covenant's validity and dismissed the Burkes' claims with prejudice.

The Burkes appeal, arguing that the superior court's findings of fact are clearly erroneous. Because the superior court's findings are not clearly erroneous and those facts support the application of laches, we affirm the superior court's decision.

## II.    FACTS AND PROCEEDINGS

### A.    Factual Background

#### 1.    The properties

The Burkes own property (Lot 9A) on Nathan Drive in Anchorage and use it as an assisted-living home for the elderly. The Makas own the adjacent property (Lot 9B) and use it as their residence.

Both properties are set back from Nathan Drive as "flagpole lots" — a flagpole lot is a rear lot (the "flag") with road access by a long narrow driveway (the "flagpole"). The lots have adjacent 20-foot Nathan Drive frontages and are served by a common paved driveway approximately 20 feet wide. The superior court found that the driveway overlaps both properties and that vehicles accessing either lot use both sides of the property line. No physical barriers separate the lots.

**2. Initial development of Lots 9A and 9B**

Residential contractor Maurice Matthews purchased a tract of land and recorded the deed in January 2001. Matthews subdivided the tract into five lots, including Lots 9A and 9B. Given the configuration of these two lots, Matthews built a common driveway down their shared property line. He reasoned that a single driveway would be less expensive than two and would increase the available yard space.

**3. Initial sale of Lot 9A and creation of the covenant**

Matthews sold Lot 9A to Daniel Steffan in November 2001. Prior to the sale, a final as-built diagram of Lot 9A showed the driveway parallel to and adjoining the flagpole section of Lot 9B. Matthews testified that Steffan would have been provided the survey at closing. Matthews asserted that either he or his real estate agent disclosed that Lots 9A and 9B shared the driveway.

Matthews signed a deed, a notice of completion, and a building certification on Friday, November 2, and each signature was notarized by the closing agent. Steffan signed closing documents the same day. Steffan also signed a purchase agreement addendum stating, "Closing date to be extended to on or before November 7, 2001." The escrow instructions define "close of escrow" as "the date of recording."

The following Monday, November 5 — before the deed to Lot 9A was recorded — Matthews filed with the municipal land use office a covenant granting the two lot owners reciprocal driveway access. He signed the covenant as the owner of both Lots 9A and 9B and left it with municipal staff. One day later, on Tuesday, November 6, Steffan's deed to Lot 9A was recorded. The municipality neither signed nor recorded the covenant until several years later.

Jillanne Inglis, a municipal employee specializing in access covenants, testified that the covenant allows the owners of Lots 9A and 9B to use the entirety of the common driveway to access their lots. Likewise, Matthews, Steffan, and Nesavou Maka

all testified that they understood the owners of Lots 9A and 9B had equal reciprocal rights to use the entire driveway.

### 4.    Sale of Lot 9B to the Leyneses and sale of Lot 9A to the Burkes

Matthews completed construction of a home on Lot 9B and sold the property to David and Angeline Leynes in March 2002. Matthews testified that he used the shared driveway while building the house on Lot 9B. Matthews and David Leynes both testified that they considered the sale of Lot 9B to convey rights to use the entirety of the driveway as shared.

Daniel Burke testified that he was looking for Anchorage property to use as an assisted-living facility. The Burkes purchased Lot 9A from Steffan in March 2004. The Burkes had no discussions with Steffan about the driveway. Steffan provided the Burkes a real property disclosure statement prior to the sale.

In February 2004, about six weeks before Steffan sold Lot 9A to the Burkes, a municipal agent signed and recorded the covenant that Matthews had submitted in 2001. No witness had an explanation for the delay. Daniel Burke and Steffan both testified they were unaware of the covenant when Lot 9A was sold. But the Burkes stipulated that they were put on constructive notice of the covenant by its recording before the sale, even though the covenant was not noted by their title insurer.

The Burkes resided on Lot 9A for several months while planning to convert the home to an assisted-living facility. Though Daniel Burke testified he was not actually aware of the covenant, he also testified that he did not protest the Leyneses' driveway use.

### 5.    Sale of Lot 9B to the Makas

About a year and a half after the Burkes purchased Lot 9A, the Leyneses listed Lot 9B for sale. The Leyneses learned of the covenant, which had not been disclosed in their title insurance policy because it had not been recorded until after they

purchased Lot 9B in 2002. David Leynes testified that the covenant was consistent with his understanding of the shared rights to the driveway and did not affect his marketing or sale of the property.

In contemplation of the sale, the Leyneses completed a disclosure statement. Under the inquiry "Are you aware of features of the property shared in common with adjoining property owners . . . ?" the Leyneses underlined the word "driveways." The Leyneses also checked "yes" in response to questions asking if there were any easements affecting the property and whether there were any subdivision conditions, covenants, or restrictions.

The Burkes were interested in acquiring the Leyneses' property and in November 2005 offered to purchase it. The Leyneses submitted a counteroffer, providing the Burkes a report describing Lot 9B as "on a flag lot with shared driveway." Immediately beneath this description is a stamp initialed by the Burkes. Daniel Burke testified that by initialing the document he acknowledged the information on the form had been provided to him, but that he did not read it.

Daniel Burke testified that he did not respond to the Leyneses' counteroffer, losing interest in part because he felt there were too many restrictions and easements on the property. Lot 9B remained on the market until the Makas purchased it in January 2006. Before their purchase, the Makas received the disclosure statement the Leyneses had prepared. Nesavou Maka testified that his real estate agent gave him a copy of the covenant and told him he would have shared access over the entirety of the driveway. The Makas' title insurer also disclosed the existence of the covenant.

### 6.     Subsequent status

Daniel Burke testified that he called the municipality four times inquiring about building a fence in the driveway along the property line. On the fourth call, the municipality told him that the covenant prevented him from building the fence.

Municipal covenant specialist Inglis testified that if the owners of Lots 9A and 9B wanted to put in two separate driveways, the municipality would have no objection to rescinding the covenant, but that the municipality stood behind the covenant.

The Makas opposed the fence, primarily because it would restrict their ability to turn into their garage. Nesavou Maka testified that a fence down the driveway would inevitably be hit because vehicles backing out of his property cross over the middle of the driveway.

## B.     Procedural History

The Burkes filed suit to quiet title in March 2009, alleging that the covenant was invalid because of intervening transfers recorded between the covenant's execution and recordation and that the Makas had no right to use any part of the Burkes' property. The Makas answered, asserting the affirmative defenses of acquiescence to the Makas' use of the shared driveway, prescriptive easement, adverse possession, and laches.

After a bench trial, the superior court entered findings of fact and conclusions of law. The court concluded that laches barred the Burkes from challenging the covenant because of the following findings: the Burkes used the driveway as shared; the Burkes had notice that the Makas would believe the driveway to be shared; and the Burkes caused the Makas prejudice by failing to assert their claim to exclusive use. Alternatively the court concluded that the covenant was valid and that the Burkes did not qualify as bona fide purchasers without notice of the covenant. The court rejected the Burkes' proposed application of the Shelter Rule — a doctrine not adopted in Alaska but which the Burkes contended would provide them a right to void the covenant if the previous owner could have. The court also concluded that even if the covenant were invalid, the Makas had established the elements of both a prescriptive easement and an implied easement to use the portion of the driveway on the Burkes' property.

The court issued a final judgment establishing a mutual reciprocal easement

and dismissing the Burkes' claims with prejudice.  The Burkes appeal.

## III.  DISCUSSION

### A.  We Affirm The Superior Court's Application Of Laches To Bar The Burkes' Claims.

Laches is an equitable defense available "when a party delays asserting a claim for an unconscionable period.  To bar a claim under laches, a court must find both an unreasonable delay in seeking relief and resulting prejudice to the defendant."[1]  The application of laches may raise three issues for review.  The first issue is whether the doctrine of laches, as an equitable defense, may apply to the claim before the court.[2]  This raises a question of law, which we review de novo.[3]  The second issue is whether the facts demonstrate an unreasonable delay and a resulting prejudice.  This raises questions of fact, which we review for clear error.[4]  Clear error exists when "we have a firm and definite conviction that a mistake has been committed."[5]  The third issue is whether, based on the facts, it was appropriate for the trial court to permit or deny laches.  We review that determination for abuse of discretion,[6] and we often explain that we will

---

[1]    *Whittle v. Weber*, 243 P.3d 208, 217 (Alaska 2010) (quoting *State, Dep't of Commerce & Econ. Dev., Div. of Ins. v. Schnell*, 8 P.3d 351, 358-59 (Alaska 2000)).

[2]    *See Gudenau v. Bang*, 781 P.2d 1357, 1363 (Alaska 1989) ("Laches is an equitable defense inapplicable to actions at law.").

[3]    *Benson v. Benson*, 977 P.2d 88, 93 n.2 (Alaska 1999) (explaining availability of equitable defenses, including laches, is question of law reviewed de novo).

[4]    *See Foster v. State*, 752 P.2d 459, 465 (Alaska 1988) (reviewing factual findings underlying laches defense for clear error).

[5]    *Id.* (quoting *Pavlik v. State, Dep't of Cmty. & Reg'l Affairs*, 637 P.2d 1045, 1047 (Alaska 1981)).

[6]    *Whittle*, 243 P.3d at 211-12.

not overturn the exercise of discretion "unless we have a definite and firm conviction that a mistake has been committed."[7] It may be more precise to ask "whether the reasons for the exercise of discretion are clearly untenable or unreasonable."[8]

The Burkes challenge only the factual underpinnings of the superior court's application of laches, arguing that they did not unreasonably delay in bringing suit and that the Makas failed to show prejudice. The Burkes do not dispute the applicability of laches to the claim they raised, nor do they otherwise dispute the superior court's exercise of discretion in permitting the defense. We focus our analysis, therefore, on whether the superior court's findings of unreasonable delay and prejudice are clearly erroneous.

The superior court found that when Lot 9B was placed on the market in late 2005, the Burkes worked with a real estate agent to inspect it and contemplated a purchase offer. At that time the Burkes were provided several disclosures, including a statement listing shared features with the word "driveways" underlined, and a report describing Lot 9B as "a flag lot with shared driveway." The report was initialed by the Burkes in November 2005. Daniel Burke testified that his initials acknowledged the information on the form had been provided to him. The court also noted that upon commencement of this litigation the Burkes provided the Makas with supplemental disclosures, including the statement and report mentioned above and a copy of the covenant. Each document described a shared driveway between Lots 9A and 9B. The court noted that the Burkes had retained these documents. Based on that evidence, the

---

[7]     *See, e.g.*, *id.* (quoting *Young v. Williams*, 583 P.2d 201, 204-05 (Alaska 1978)) (internal quotation marks omitted).

[8]     *See Lewis v. State*, 469 P.2d 689, 695 (Alaska 1970) (applying "clearly untenable or unreasonable" standard to review discretion in admitting evidence, but noting "[t]here is no general consensus as to what constitutes an abuse of discretion").

superior court found that as early as November 2005, the Burkes had received notice that Lot 9B was being marketed to prospective buyers as having a shared driveway.

The court found no indication that the Burkes informed the seller of Lot 9B or prospective buyers of their disagreement with the status of the driveway. The court found that from the time they purchased Lot 9A in March 2004 until January 2009, the Burkes never asserted a right to the exclusive use of their side of the driveway and visibly used the driveway as shared.

The court found that the Makas relied on the title and on disclosures from their seller in assuming that they purchased Lot 9B with a shared driveway. The court found that by failing to make known their objection to the shared driveway, the Burkes deprived the Makas of information material to their purchase of Lot 9B and that deprivation prejudiced the Makas.

After reviewing the record and the superior court's underlying findings, we are not left with a definite and firm conviction that the superior court mistakenly found unreasonable delay and prejudice. We hold that the superior court's ultimate findings of unreasonable delay and prejudice are not clearly erroneous, and because the Burkes' appeal is limited to those findings, we affirm the superior court's conclusion that laches bars the Burkes' claims.

B.     **Affirming The Superior Court's Application Of Laches Resolves The Appeal.**

Because we affirm the dismissal of the Burkes' claims on the ground of laches, we do not need to address the Burkes' arguments that the original covenant is invalid or non-binding; that a shelter rule allows the Burkes to assume the bona fide purchaser status of their predecessor; or that the Makas failed to establish the affirmative defenses of prescriptive or implied easement.

## IV. CONCLUSION

The superior court's decision is AFFIRMED.