*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JEAN R. KOLLANDER, ) | |
| ) | Supreme Court No. S-14904 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-90-06548 CI |
| v. ) | |
| ) | O P I N I O N |
| DARYL E. KOLLANDER, ) | |
| ) | No. 6895 – April 18, 2014 |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Stephen Merrill, Anchorage, for Appellant. David W. Baranow, Law Offices of David Baranow, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

## I.    INTRODUCTION

Jean Kollander seeks to modify the pension division in a qualified domestic relations order originally entered by the superior court in 1992. The federal pension administrator paid Jean's share of her former spouse's pension in accelerated lump sum payments from 2007 to 2008. In 2012 Jean brought a claim that she was instead entitled to lifetime monthly payments. After an evidentiary hearing, the superior court found that

her claim was barred by laches and awarded full attorney's fees and costs to her former spouse. Jean appeals the application of laches and the award of attorney's fees. We conclude that the superior court's findings of unreasonable delay and prejudice are not clearly erroneous and that the superior court did not abuse its discretion in applying laches. But because the superior court failed to apply Alaska Rule of Civil Procedure 82 in the award of attorney's fees, we reverse that award and remand for a determination of attorney's fees in accordance with this decision.

## II.  FACTS AND PROCEEDINGS

Daryl and Jean Kollander married in 1969 and separated in 1990. Both Daryl and Jean were represented by counsel in their divorce proceedings, and they reached a settlement regarding property division, child support, and custody. The superior court issued a divorce decree in September 1991 that accorded with the terms of the parties' settlement.

During the course of their marriage, Daryl and Jean contributed to their employers' respective retirement programs. At the time of divorce, Jean was vested in the Alaska Teamsters-Employers Pension Plan, and Daryl was vested in the federal Civil Service Retirement System through his employment with the Alaska Railroad. The divorce settlement provided that "each party will be awarded one-half interest in the other part[y's] pension benefit earned to date" and "[a]ppropriately worded qualified domestic relations orders will be drafted and submitted to the court for signature." Pursuant to the settlement, Jean's former counsel, Terry C. Aglietti,[1] prepared two qualified domestic relations orders, which were subscribed as approved by Daryl's counsel and entered by the court on May 7, 1992.

---

[1]  Jean claims that Daryl's counsel drafted his order. However, the superior court specifically found that Aglietti prepared both orders, and this finding is supported by the fact that both orders were drafted on Aglietti's pleading paper.

The order entered on behalf of Jean reads, in relevant part:

> 6.      Alternate payee, Jean R. Kollander, is entitled to one-half the sum of participant, Daryl E. Kollander's benefits as of April 1, 1990, payable from the contributions to the plan made *by or* on behalf of participant.
>
> 7.      Distribution and calculation of these benefits pursuant to this order shall be pursuant to guidelines accepted by the Internal Revenue Service.

(Emphasis in original.)

The other order contains similar language naming Daryl as an alternate payee under Jean's plan:

> 4.      The Plaintiff [Daryl Kollander] shall be entitled to receive one-half the sum of Defendant's [Jean Kollander's] benefits as of April 1990, payable from the contributions to the Plan made *by or* on behalf of the Defendant [Jean Kollander].

(Emphasis in original.)

Neither party had retired or begun receiving benefits at the time of divorce or at the entry of the qualified domestic relations orders. In 1996 Daryl received a letter from the Teamster Pension Trust informing him that the qualified domestic relations order that he had submitted needed to be amended in order to receive his share of Jean's benefits once she retired or reached age 50. Jean retired in 1999 although Daryl was unaware of her retirement. She then turned 50 years old in January 2001, and an amended qualified domestic relations order was prepared by Daryl and entered by the court in February 2001.

Jean denies receiving notice of Daryl's amendment although the record includes the notice and affidavits of mailing to her last known addresses as well as to Aglietti's law office. In any event, Jean's position is that she would not have objected to the amendment. The Teamster Pension Trust informed Daryl of his option to receive

approximately $283.53 per month for his lifetime or to receive a lump sum payment of $23,766.81. Daryl chose the lifetime benefit and since 2001 has received a periodic monthly annuity payment from Jean's Teamster pension.

Daryl was employed by the Alaska Railroad from 1969 until June 2007. According to his affidavit, Daryl was classified as a career employee beginning in 1976 and had contributed $46,663.35 to the Civil Service Retirement System at the time of his separation from Jean. Daryl's benefits are administered by the federal Office of Personnel Management, and distribution began when he retired in 2007.

In 2007 Jean received a letter from the Office of Personnel Management informing her that the Office had "received and approved your application for a portion of your former spouse's civil service retirement benefit." The letter referenced federal regulations[2] and went on to state that

> [b]y court order we are to pay you a lump sum of $22,459.81 from your former spouse's retirement benefit. By regulation we must pay this lump sum to you in installments equal to one half of your former spouse's gross monthly annuity until the lump sum is paid in full. Currently you are to receive $1,796.50 per month.

Jean received subsequent monthly payments of $1,796.50 directly deposited into her checking account for approximately twelve and a half months. The last payment was received by Jean in 2008. She acknowledges that she received the $22,459.81 in full, spent some of the funds, and still retains a portion in her account.

In April 2012 Jean filed motions to reopen the pension division order for entry of a detailed pension division order and to hold Daryl in contempt for failing to pay

---

[2]    5 U.S.C. § 8345 (2012) concerns the commencement, termination, and waiver of benefits paid by the Office of Personnel Management. 5 C.F.R. § 838 (2014) concerns court orders affecting retirement benefits.

the marital share of his pension benefits. In August 2012 the superior court held an evidentiary hearing during which both Jean and Daryl offered testimony on the division of his pension. When questioned by the court at the hearing, Jean did not dispute that the $22,459.81 figure used by the Office of Personnel Management accurately stated her portion of Daryl's pension that had accrued through the date of the divorce settlement. She testified that she "was expecting $22,000 but not at $1700 a month." She also testified, "I would have been satisfied with that . . . if Mr. Kollander hadn't received mine for life. . . . [Y]ou look at the monies he's already received from mine . . . [and] he got $38,000. That is a little bit more than $22,000 and he continues to receive that for — for his lifetime, which will clearly exceed $22,000."

Jean repeatedly attempted to use calculations prepared by her counsel to show how much money she would have received if she had received monthly lifetime benefits instead of the accelerated payments. Jean claims that these calculations show Daryl to be in arrears. The accuracy of Jean's calculations was not established because the superior court found that her proffered exhibit failed to comply with the applicable evidentiary rules, and the superior court did not admit the exhibit into evidence. Jean continues to rely on these calculations on appeal.

There is some question whether Jean properly submitted her order to the Office of Personnel Management and how the Office obtained her direct deposit information. Jean denies submitting anything to the Office and disclaims any knowledge about her former counsel submitting the order or anything else to the Office on her behalf. In particular, she denies submitting an application for benefits to the Office or a request for a lump sum payment as opposed to lifelong benefits from Daryl's pension. When questioned about the direct deposit of the payments, Jean testified that "they just magically appeared in my account . . . . I had not given a route number, checking number for Wells Fargo because I'd not had that account open very long."

The record shows that Aglietti sent the order to the Alaska Railroad, and they returned it with instructions to file the order with the Office of Personnel Management. The response also indicated that "[t]he Alaska Railroad will retain a copy of the [qualified domestic relations order] in Mr. Kollander's personnel file, and send it along with his retirement application when he files for benefits; however [the federal Civil Service Retirement System] will execute the order." Jean's current counsel stated that he contacted Aglietti and was informed that he has no file, no documents, and no memory of the case.

Daryl also denies submitting anything to the Office of Personnel Management relating to the division of his pension plan. The superior court made specific findings of Daryl's credibility in regard to this denial and the lack of any evidence of wrongdoing on the part of Daryl.[3]

Jean testified that after she received the letter from the Office of Personnel Management in 2007, she called the Office on a regular basis and wrote several letters to find out why the Office paid her share as a lump sum and to retrieve any records in their possession. She testified that she received no response from the Office until shortly before the evidentiary hearing in 2012. The record does not contain any letters or other communication from Jean to the Office prior to 2012.

---

[3]   A significant portion of Jean's argument at trial was devoted to an attempt to establish a pattern of fraudulent conduct by Daryl. In a similar vein, Jean includes in her appellant brief numerous factual details relating to points not on appeal. At the evidentiary hearing, Jean was unable to produce documentary evidence of any wrongdoing by Daryl or third parties, and Jean's testimony contradicted the documentary evidence that was available as well as the relevant third-party testimony. The superior court found no evidence of a pattern of fraudulent conduct. These facts do not otherwise have legal significance in regard to the division of Daryl's pension.

While Jean was living in Colorado, she consulted with Colonel Edwin Schilling, who was assisted by another Alaska attorney, regarding her qualified domestic relations order. Jean indicated that at some point Col. Schilling and the Alaska attorney advised her that they were unable to help her and that she should hire an attorney in Alaska. She testified that when she returned to Anchorage, she hired another attorney. The record contains no evidence of any contact with the Office of Personnel Management or any legal action taken on Jean's behalf by any of the attorneys she contacted. She later hired attorney Stephen Merrill, who initiated motion practice in April 2012 to reopen the pension division order and find Daryl in contempt. When asked on cross-examination, Jean acknowledged that she knew of no filings made on her behalf between the filing of the final orders in 1992 and her 2012 motions.

Merrill wrote a letter of inquiry to the Office of Personnel Management on April 1, 2012, requesting all records concerning the division of Daryl's pension. On May 30, 2012, the Office responded in a letter to Jean informing her, "[y]ou did not complete an actual application for a portion of your ex-spouse's annuity. When a court order is submitted to our office we must process it according to the law. That is how you received the monies from your ex-spouse's annuity. A copy of the court order is enclosed." Enclosed with the letter were Jean's divorce decree, the separation agreement, and the qualified domestic relations order originally prepared for her in 1992. It seems likely that these documents were forwarded to the Office of Personnel Management by the Alaska Railroad when Daryl retired and filed for benefits.

The superior court found that Jean's own counsel prepared a qualified domestic relations order in conformity with the divorce settlement, that the order was submitted and accepted, and that the Office of Personnel Management applied its own published regulations in establishing the mechanism of payment. The court went on to find that the "[Office of Personnel Management] did exactly that which was requested

and required of it as the federal pension administrator, and that Jean received the benefit of her bargain" when she accepted the payments from the Office. The court specified that it "makes no finding whether there were alternative ways in which these benefits could have been distributed had [Jean] or her attorney made such a request."

The superior court also found that Jean's "present filings are made more than twenty years after the entry of all relevant orders, the Findings/Conclusions and the parties' Decree of Divorce." The court found that Jean "failed to object to the form of the orders her own counsel drafted over that extended period of time, and that she failed to make any subsequent effort to open, correct or otherwise seek relief from the judgments she benefitted from for more than two decades." In applying the doctrine of laches, the court found that Daryl "has been irrevocably prejudiced in this instance and motion practice by [Jean's] unexplained and unjustified delay given the dissipation and reasonably expected loss of evidentiary materials over ensuing years."

At the close of testimony, the superior court discussed attorney's fees with counsel: "I indicated earlier that I was likely to award attorney[']s fees in this case to the prevailing party." Addressing Jean's counsel, the superior court "suggest[ed] strongly you discuss that with [Jean] as to whether you want to take the risk of me making a ruling on this case or whether you want to work out something in that regard with [Daryl's counsel]." No settlement was reached, and the superior court subsequently concluded that "[g]iven the lack of admissible evidence adduced after a protracted hearing on the merits . . . [Daryl] is entitled to recover his actual attorney[']s fees and costs from [Jean] incurred in the defense of her motion." The court awarded $8,190.01 in fees and costs to Daryl.

Jean now appeals the superior court's application of laches and the award of attorney's fees.

## III. STANDARDS OF REVIEW

"The application of laches may raise three issues for review."[4] "The first issue is whether the doctrine of laches, as an equitable defense, may apply to the claim before the court."[5] "This raises a question of law, which we review de novo."[6] "The second issue is whether the facts demonstrate an unreasonable delay and a resulting prejudice. This raises questions of fact, which we review for clear error."[7] "Clear error exists when we have a firm and definite conviction that a mistake has been committed."[8] "The third issue is whether, based on the facts, it was appropriate for the trial court to permit or deny laches."[9] "We review that determination for abuse of discretion"[10] and have explained that the exercise of discretion will not be overturned without "a definite and firm conviction that a mistake has been committed."[11] We have clarified that a "more precise" formulation may be to ask " 'whether the reasons for the exercise of discretion are clearly untenable or unreasonable.' "[12]

---

[4]   *Burke v. Maka*, 296 P.3d 976, 979 (Alaska 2013).

[5]   *Id.* (citing *Gudenau v. Bang*, 781 P.2d 1357, 1363 (Alaska 1989)).

[6]   *Id.* (citing *Benson v. Benson*, 977 P.2d 88, 93 n.2 (Alaska 1999)).

[7]   *Id.* (citing *Foster v. State*, 752 P.2d 459, 465 (Alaska 1988)).

[8]   *Id.* (internal citation omitted).

[9]   *Id.*

[10]   *Id.* (citing *Whittle v. Weber*, 243 P.3d 208, 211-12 (Alaska 2010)).

[11]   *Id.* (internal citation and quotation mark omitted).

[12]   *Id.* at 980 (quoting *Lewis v. State*, 469 P.2d 689, 695 (Alaska 1970)).

"Whether the court applied the proper legal analysis to calculate attorney's fees is a question of law we review de novo."[13] When the correct legal analysis is applied, we review the subsequent award of attorney's fees for abuse of discretion.[14]

## IV. DISCUSSION

### A. The Superior Court Did Not Err In Its Application Of The Doctrine Of Laches.

"Laches is an equitable defense available 'when a party delays asserting a claim for an unconscionable period. To bar a claim under laches, a court must find both an unreasonable delay in seeking relief and resulting prejudice to the defendant.' "[15] When motions following a divorce decree are brought under the same caption, laches may apply to bar the claims.[16] "Having raised the affirmative defense of laches," Daryl "bore the burden of demonstrating . . . both elements of the defense."[17]

Jean does not contest laches being an appropriate defense to her claim, but she challenges the factual underpinnings of the superior court's application of laches, arguing that she was reasonably diligent in pursuing a remedy and that Daryl failed to show prejudice. She also argues that the superior court abused its discretion in permitting the laches defense to Jean's claim when Daryl was permitted to amend his qualified domestic relations order in 2001. The superior court made findings of

---

[13] *Weimer v. Cont'l Car & Truck, LLC*, 237 P.3d 610, 613 (Alaska 2010) (citing *Glamann v. Kirk*, 29 P.3d 255, 259 (Alaska 2001)).

[14] *Id.*

[15] *Burke*, 296 P.3d at 979 (quoting *Whittle*, 243 P.3d at 217).

[16] *See Schaub v. Schaub*, 305 P.3d 337, 343-44 (Alaska 2013).

[17] *See Laverty v. Alaska R.R. Corp.*, 13 P.3d 725, 731 (Alaska 2000) (citing *Winn v. Mannhalter*, 708 P.2d 444, 450 (Alaska 1985)).

unreasonable delay and prejudice, which we review for clear error. If we do not find clear error in the factual findings, then we review the application of laches for abuse of discretion.[18]

### 1. The superior court's finding of unreasonable delay was not clearly erroneous.

"The essence of laches is not merely the lapse of time, but also a lack of diligence in seeking a remedy, or acquiescence in the alleged wrong and prejudice to the defendant."[19] Jean and Daryl disagree over the point in time when Jean should have sought a remedy for the pension division and thus how reasonable Jean's delay was. Daryl asserts that Jean failed to object to the accelerated payments for at least six years after she received them. Jean argues, without citing legal support, that the controlling event for applying laches is the date when Daryl first accrued an arrearage in pension payments to Jean. Jean then relies on the unadmitted calculations prepared by her counsel to argue that the first arrearage accrued in April 2009, which would make for a delay of 36 months before she filed her complaint.

To support its finding of unreasonable delay, the superior court found that Jean did not object to the accelerated payment schedule when she received the explanatory letter from the Office of Personnel Management, while she was receiving the payments, or when the payments were completed in 2008. In addition to the finding that Jean failed to take any legal action between the receipt of the letter from the Office and the filing of her 2012 motions, the superior court also found that Jean received a permissible division of Daryl's pension based on the language of the qualified domestic relations order so there was no arrearage. We note that the language in Jean's qualified

---

[18]  *Burke*, 296 P.3d at 979.

[19]  *Schaub*, 305 P.3d at 343 (quoting *Wolff v. Arctic Bowl, Inc.*, 560 P.2d 758, 767 (Alaska 1977)).

domestic relations order does not mandate accelerated payments instead of a lifetime monthly benefit. But we conclude that the superior court did not clearly err in finding that the accelerated payments that Jean received constituted an acceptable division of Daryl's pension.

Both the superior court and Daryl cite to a case where we held that "[a]n aggrieved party must file suit promptly once it is clear the transgressor has committed to an irrevocable course of conduct. . . . The ultimate questions are whether and when a reasonable person would have been galvanized into legal action."[20] Jean argues that she was "as diligent in pursuing a remedy as a reasonable soul could be, especially one so rattled by the prospect of litigation." However, for almost five years after the 2007 letter informed her of the Office of Personnel Management's understanding of her order, she took no action other than attempted communication with the Office and consultation with several attorneys, none of whom took any action on her behalf.

The clearly erroneous and abuse of discretion standards of review employed in this case are deferential to the superior court's findings and exercise of discretion.[21] In *Burke v. Maka*, a case concerning a real property covenant, we upheld a laches defense based on the superior court's findings of unreasonable delay and prejudice after a delay of five years.[22] We have also upheld application of laches when a litigant

---

[20] *Kohl v. Legoullon*, 936 P.2d 514, 517 (Alaska 1997) (citing *City & Borough of Juneau v. Breck*, 706 P.2d 313, 316 (Alaska 1985)).

[21] *See, e.g.*, *Offshore Sys.-Kenai v. State, Dep't of Transp. & Pub. Facilities*, 282 P.3d 348, 354 (Alaska 2012) (noting the superior court's "broad discretion to sustain or deny a defense based on laches" (quoting *Keener v. State*, 889 P.2d 1063, 1066 (Alaska 1995))); *Cowan v. Yeisley*, 255 P.3d 966, 977 (Alaska 2011); *Foster v. State*, 752 P.2d 459, 465-66 (Alaska 1988).

[22] *Burke*, 296 P.3d at 980.

delayed for only 13 months after learning of his cause of action before seeking to enjoin the performance of a contract.[23]  In the two cases cited by Jean, we also affirmed the superior courts' factual findings and exercise of discretion.[24]

Jean compares her delay to the amount of time between the 1996 letter that Daryl received regarding Jean's Teamster pension and the entry of his amended order in 2001.  Jean argues that this period of 53 months between receiving notice of a deficient qualified domestic relations order and amendment of the order constitutes the "law of the case," which must also apply to Jean's attempt to amend her order.  Jean cites to *Beal v. Beal*[25] for the proposition that it is a violation of the law of the case doctrine to take opposite actions in the same case.  However, *Beal* does not support her broad formulation of the doctrine; *Beal* dealt with reconsideration of issues adjudicated in a previous appeal.[26]  In Jean's case, there has been no previous appeal, only the uncontested amendment of Daryl's order to comply with the Teamster Pension Trust's formal requirements, which did not involve a legal ruling on unreasonable delay or the applicability of laches.  The law of the case doctrine articulated in *Beal* does not support Jean's contention that an excused delay of up to 53 months is the binding law of the case such that we must conclude that the superior court clearly erred or abused its discretion in this case.

---

[23]     *Laverty v. Alaska R.R. Corp.*, 13 P.3d 725, 729 (Alaska 2000).

[24]     *Cowan*, 255 P.3d at 977; *Foster*, 752 P.2d at 466.

[25]     209 P.3d 1012 (Alaska 2009).

[26]     *Id.* at 1016-17 ("The law of the case doctrine . . . generally prohibits the reconsideration of issues which have been adjudicated in a previous appeal in the same case." (internal citations and quotation marks omitted)).

On the issue of disparate treatment by the superior court, Daryl argues that he was not required to amend his order until Jean retired and he became eligible for benefits. He asserts that when she did retire, he acted immediately, had an amended order approved and entered by the court, and served the amended order on Jean before he received any benefits. He contrasts this with Jean's delay in bringing suit after she had already accepted and had use of the accelerated lump sum payments.

Jean acknowledged receiving the 2007 letter from the Office of Personnel Management that clearly stated that she would receive a lump sum of $22,459.81 from Daryl's retirement benefit in monthly payments of $1,796.50 until the lump sum was paid in full. She also acknowledged that she consulted with counsel beginning in 2007 and took no legal action until 2012. Based on Jean's receipt of the explanatory letter, her acceptance of the accelerated payments, and her lack of action for years after the final payment, we conclude that the superior court did not clearly err in finding unreasonable delay and did not abuse its discretion in its treatment of Jean and Daryl.

### 2. The superior court's finding of prejudice was not clearly erroneous.

The superior court found that Daryl had been "irrevocably prejudiced . . . by [Jean's] unexplained and unjustified delay given the dissipation and reasonably expected loss of evidentiary materials over ensuing years." Many of the superior court's findings of prejudice relate to Jean's claim that she did not receive proceeds from the sale of the marital home, a claim which she has dropped on appeal.[27] The findings of prejudice that relate to Jean's pension claim include the specific finding that Jean's

---

[27] The superior court references "the demise of the actual escrow closing company involved, the assimilation of mortgage companies and the expected passage of time [which] have resulted in a pervasive inability to produce closing records, check stubs, files and file notes or statements and the like."

former attorney, Aglietti, no longer has any files or memory of the transactions at issue, as well as the more general finding of "profound difficulties engendered in obtaining decades-old banking, retirement and correspondence records experienced by both parties in prosecuting and defending the present motion practice."

Daryl adds that Jean's briefing includes suggestions of "corrupt title companies, complicit pension administrators and attorneys committing wholesale malpractice," and discovery or proof of these matters would be "incredibly difficult, if not impossible" given the passage of time and unavailability of records. Jean counters that Daryl suffered no prejudice since the "entire [Office of Personnel Management] file was produced for the hearing," and "[l]ike a real estate title, the [qualified domestic relations orders] and [Office] documents of official record told the full tale."

We note that a portion of Jean's case turns on what, if anything, she or her prior counsel submitted to the Office of Personnel Management, specifically whether she requested or approved accelerated lump sum payments instead of lifetime benefits and how the Office obtained her direct deposit information if she did not. The superior court found that Jean "denied ever receiving any correspondence or application/option election documentation from [the Office] as Plan Administrator." In her testimony, Jean details her own and her counsel's difficulties in obtaining records from the Office as well as her lack of knowledge about what exactly her various counsel did in filing her order or pursuing her claim. Given that there is an evidentiary issue about Jean's submissions and communications with the Office and that the lack of any retained attorney's files could potentially prejudice Daryl's defense, we conclude that the superior court did not clearly err in finding prejudice.

**3.** **The superior court did not impermissibly delegate its authority to the Office of Personnel Management and did not abuse its discretion in applying laches.**

Jean points to the superior court's findings of fact and comments at the evidentiary hearing to argue that the superior court impermissibly delegated its authority to interpret the pension division order to the Office of Personnel Management and thereby abused its discretion. Jean claims that the superior court gave substantial legal weight to the Office's 2007 letter and that the court even stated that the IRS has the authority to interpret divorce decrees.

Jean's qualified domestic relations order provided that she "is entitled to one-half the sum of participant, Daryl E. Kollander's benefits as of April 1, 1990, payable from the contributions to the plan made *by or* on behalf of participant." (Emphasis in original.) We note that the language in Jean's qualified domestic relations order does not mandate accelerated payments instead of a lifetime monthly benefit. But while the Office of Personnel Management may have been mistaken in interpreting Jean's order to direct a lump sum payment (presuming that Jean did not request or approve the lump sum payment when her direct deposit information was conveyed to the Office), the question before this court is not whether the Office correctly interpreted Jean's order. The question is whether the superior court abused its discretion in applying laches when it found that Jean knew of the Office's interpretation in 2007, received the final payment in 2008, and did not seek to correct that interpretation until 2012. We conclude that the superior court did not abuse its discretion in applying laches.

**B.     The Superior Court Erred In Awarding Daryl Full Attorney's Fees.**

As noted above, the question "[w]hether the court applied the proper legal analysis to calculate attorney's fees is a question of law we review de novo."[28]  Under Civil Rule 82, a prevailing party in a civil case is normally entitled to an award of a percentage of reasonable attorney's fees.[29]

The superior court awarded Daryl full attorney's fees and costs after noting "the lack of admissible evidence [presented by Jean] after a protracted hearing on the merits."  The superior court did not state its framework for awarding attorney's fees and did not discuss Rule 82 or its exceptions in its findings of fact and conclusions of law on attorney's fees.

**1.     The divorce exception to Rule 82 does not apply to a pension order modification case brought after the entry of the divorce decree.**

Jean argues that the superior court was required to apply Rule 82.  Relying on the "divorce exception" to Rule 82,[30] Daryl responds that Rule 82 does not apply in

---

[28]     *Weimer v. Cont'l Car & Truck, LLC*, 237 P.3d 610, 613 (Alaska 2010) (citing *Glamann v. Kirk*, 29 P.3d 255, 259 (Alaska 2001)).

[29]     Rule 82(a) provides:  "Except as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule."  Alaska R. Civ. P. 82(a).

[30]     We have summarized the law governing attorney's fees in divorce cases as follows:

> A prevailing party in a civil case is normally entitled to an award of attorney's fees, per Rule 82.  Divorce cases are usually excepted from this general rule; fees awards in divorce cases are typically based on the parties' relative economic situations and earning powers, rather than prevailing party status.  This "divorce exception" to Rule 82

(continued...)

divorce cases, with the limited exception of child support modifications.  But we held in *Hopper v. Hopper* that "Rule 82 can be used to award attorney's fees to the prevailing party in a Rule 60(b)(6) motion to modify a divorce decree and that the divorce exception to Rule 82 is inapplicable to post-judgment modification and enforcement motions."[31]  While Jean did not frame her pension division claim in the context of Alaska Civil Rule 60(b),[32] the superior court stated at the hearing that the pension issue would be analyzed under Rule 60(b).  Based on the superior court's own stated framework, Rule 82 was the appropriate rule to govern the award of attorney's fees.

Like the present case, *Worland v. Worland*[33] involved a post-divorce decree pension modification and the awarding of attorney's fees.  We quoted *Hopper* for the proposition that "the divorce exception to Rule 82 is inapplicable to post-judgment modification and enforcement motions."[34]  But in *Worland*, neither party argued that it was error for the superior court to award attorney's fees under the divorce exception to

---

[30](...continued)
> is based on a broad reading of AS 25.24.140(a)(1), and on the reality that there is usually no prevailing party in a divorce case.

*Johnson v. Johnson*, 239 P.3d 393, 399 (Alaska 2010) (internal citations omitted).

[31]     171 P.3d 124, 133 (Alaska 2007).

[32]     At the end of the evidentiary hearing, the superior court sua sponte invited Jean to address Rule 60(b) as a possible basis for her claim.  Although Jean chose not to brief Rule 60(b) in her proposed findings of fact and conclusions of law, the superior court addressed Rule 60(b) in its decision and found no grounds for relief.  In her appellant brief, Jean affirmatively disavows the applicability of Rule 60(b).

[33]     240 P.3d 825, 833 (Alaska 2010).

[34]     *Id.* at 832 n.38 (quoting *Hopper*, 171 P.3d at 133).

Rule 82 instead of under Rule 82 itself.[35] Because neither party objected, we followed the superior court and the parties in analyzing the attorney's fee award under the divorce exception.[36] In this case, by contrast, Jean immediately objected and argued that Rule 82 should have been used. We agree that "Rule 82 applies to post-judgment modification and enforcement matters in domestic relations disputes and that fees are appropriately awarded under the prevailing-party standard of Rule 82 as to post-judgment money and property disputes."[37]

We therefore remand the issue of attorney's fees to the superior court for application of Rule 82.

> **2. In remanding for application of Rule 82, we note that the superior court did not make sufficient findings to award full attorney's fees on the basis of "vexatious or bad faith conduct."**

Rule 82(b)(2) provides for partial fee awards "[i]n cases in which the prevailing party recovers no money judgment." Rule 82(b)(3) lists factors[38] that permit a court to depart from Rule 82(b)(2)'s default fee award and "to award enhanced or even full reasonable fees."[39] "We have held that '[i]n general, a trial court has broad discretion to award Rule 82 attorney's fees in amounts exceeding those prescribed by the

---

[35] *Id.* at 833.

[36] *Id.*

[37] *Johnson v. Johnson*, 239 P.3d 393, 399-400 (Alaska 2010) (internal citations omitted).

[38] Among the factors listed under Rule 82(b)(3) that allow a court to vary an attorney's fees award is "vexatious or bad faith conduct." Alaska R. Civ. P. 82(b)(3)(G).

[39] *Johnson*, 239 P.3d at 400.

schedule of the rule, so long as the court specifies in the record its reasons for departing from the schedule.' "[40]

But we have also held that "full fees may not be awarded under Rule 82(b)(3) except under Rule 82(b)(3)(G)."[41] "A Rule 82(b)(3) award of full fees is 'manifestly unreasonable' absent a finding of bad faith or vexatious conduct."[42] Therefore, an award of full attorney's fees is appropriate only if the superior court made valid findings of vexatious or bad faith litigation or if its findings "reasonably permit an inference of vexatious or bad faith litigation conduct satisfying Rule 82(b)(3)(G)."[43]

While the superior court mentioned during the course of the hearing that Jean failed to meet her burden of proof, and it ultimately found that Jean failed to offer adequate admissible evidence to support her positions, the superior court did not make specific findings of vexatious or bad faith litigation. And we note that the findings made by the superior court do not "reasonably permit an inference of vexatious or bad faith litigation conduct satisfying Rule 82(b)(3)(G)."[44]

## V.    CONCLUSION

We AFFIRM the superior court's application of laches. We REVERSE the superior court's award of full attorney's fees and REMAND for consideration of attorney's fees in accordance with this opinion.

---

[40]    *Id.* (alteration in original) (quoting *United Servs. Auto. Ass'n v. Pruitt ex rel. Pruitt*, 38 P.3d 528, 535 (Alaska 2001)).

[41]    *Id.* at 403.

[42]    *Id.* at 400 (citation omitted).

[43]    *Id.* at 403.

[44]    *Id.*