*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| HOLLY SHELDON LEE and SHELDON AIR SERVICE, LLC, | ) ) ) | Supreme Court Nos. S-16442/16471 |
| Appellants and Cross-Appellees, | ) ) | Superior Court No. 3AN-15-05117 CI |
| v. | ) ) | O P I N I O N |
| ROBERT DONALD SHELDON, individually and as Trustee of the Roberta Reeve Sheldon 2014 Grantor Controlled Revocable Trust, | ) ) ) ) ) | No. 7285 – August 31, 2018 |
| Appellee and Cross-Appellant. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Pamela Scott Washington, Judge pro tem, and William F. Morse, Judge.

Appearances: Robert John, Law Office of Robert John, Fairbanks, for Appellants and Cross-Appellees. Kevin G. Clarkson and Matthew C. Clarkson, Brena, Bell & Clarkson, P.C., Anchorage, for Appellee and Cross-Appellant.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

BOLGER, Justice.

## I.  INTRODUCTION

Following mediation, a trust beneficiary and a trustee signed a document purporting to settle bitter family litigation and referring future disputes to the mediator for resolution.  The beneficiary subsequently denied that she had settled and asked the mediator to resolve the issue, and the mediator concluded that the parties had reached a binding settlement.  The beneficiary tried to resurrect this issue in the superior court, but the court concluded that the mediator's decision was within the scope of the authority conferred by the parties.  We conclude that the superior court did not err by confirming the mediator's decision.  We also conclude that the court did not err by denying the beneficiary's petition to review the trustee's compensation, or by awarding Alaska Civil Rule 82 attorney's fees to the trustee.  We therefore affirm the superior court's judgment.

## II.  FACTS AND PROCEEDINGS

### A.  Creation Of Mountain House, LLC And Roberta Sheldon's Trust

In the 1960s, famed Alaska bush pilot Don Sheldon built a cabin — known as the Mountain House — at the head of Ruth Glacier in Mount McKinley National Park (now Denali National Park).  Following Don's death in 1975, his wife Roberta Sheldon assumed control of the Mountain House.  In 2006 Roberta created Mountain House, LLC to own and manage the cabin.

In early 2014 Roberta conveyed Mountain House, LLC and other assets into a newly created revocable trust.  The trust names the Sheldons' three children Holly, Robert, and Kate[1] as beneficiaries and designates Robert as successor trustee.  It establishes procedures for distribution of real and personal property among the beneficiaries.  It also includes a penalty clause designed to dissuade the beneficiaries from contesting the trust's terms.  The clause provides that persons who contest the trust

---

[1]  Kate Sheldon is not involved in this dispute.

or its provisions "shall not benefit in any way under this Trust . . . and shall not receive any distribution whatsoever."

Following Roberta's death in June 2014, Robert became trustee. Holly requested an accounting of trust assets in September, and Robert provided a list of assets the following month. In December, Robert — acting in his capacity as trustee — drafted an operating agreement appointing himself as manager of Mountain House, LLC. The agreement provided that membership shares in the LLC would be distributed equally among Holly, Robert, and Kate "[a]t such time as the Trustee deems suitable for both this LLC and the Trust."

## B.     Initial Litigation

Over the following months, disagreements arose between Holly and Robert concerning his administration of the trust. Holly claimed that Robert had failed to adequately respond to her request for an accounting and that he also had failed to distribute trust assets that she had requested and that he had stated he would provide.

In February 2015 Holly and her company, Sheldon Air Service, LLC (SAS),[2] filed a lawsuit against Robert individually and in his capacity as trustee. Holly argued that Robert had "unlawfully detained . . . Trust assets without regard to the beneficiaries' distribution rights" and that he had breached his fiduciary duties "[b]y refusing to timely distribute Mountain House, LLC to the beneficiaries."[3] She moved for summary judgment, asking the superior court to rule that Robert was required "to immediately distribute the Mountain House, LLC, to its three, equal owners." Robert

---

[2]     SAS is a limited liability company owned by Holly and her husband David Lee.

[3]     Holly's complaint also alleged breach of contract; she argued that Robert had violated a previously existing agreement granting SAS unrestricted rights to transport Mountain House guests.

brought a cross-motion for summary judgment, arguing that Holly had "no right to distribution, immediate or otherwise, of an in-kind membership in the Mountain House, LLC" and that Holly's complaint and litigation violated the trust's penalty clause.

In November 2015 the superior court ruled that under the terms of the trust, Robert was entitled to determine which children would receive membership interests in Mountain House, LLC. It also found that Robert was not obligated to immediately distribute Mountain House, LLC. However, the court rejected Robert's argument that Holly's litigation had triggered the trust's penalty clause. Noting that attempts to enforce rights or "secure an interpretation of [an] instrument" generally do not trigger penalty clauses, the court held that Holly had "advanced a reasonable interpretation of the trust in light of an ambiguity." Though the court "[found] her interpretation unsupported," it concluded that Holly had merely sought to "clarify and enforce the trust," not void it, nullify it, or set it aside.

C.    **Mediation And Subsequent Disputes**

Robert and Holly participated in mediation conducted by retired superior court judge Eric Sanders in December 2015. Following the mediation, the parties signed a document titled "Mediator's Proposal" (Proposal). Under the terms of the Proposal, Holly would pay $25,000 into Mountain House, LLC. She would receive a one-third, non-voting interest in the LLC as well as various personal effects from the trust's corpus, and she would be granted periodic access to the Mountain House. The Proposal stated that the parties had "reached an agreement to the settlement of all claims of all parties" and would "execute a Settlement Agreement and Mutual Release of All Claims between the parties as a result of the full and complete settlement reached." Lastly, paragraph 11 of the Proposal provided that "[a]ny disputes concerning [the Proposal's] terms or the execution of these terms and the Settlement and Release shall be resolved finally and completely by Eric Sanders."

Per the Proposal's terms, Robert sent Holly a draft settlement agreement to review. In response Holly sent a "Response Regarding Term Sheet" (Response) to Sanders arguing that the Proposal had not settled her claims against Robert. She argued that at the time she signed the Proposal, she "believed [the] document was merely a proposal . . . and that her signature would not result in a binding agreement." She also claimed that she "lacked sufficient information concerning the assets and liabilities of the Trust" to make an informed decision during the mediation and that Robert's failure to provide this information "vitiate[d] [her] consent" to any settlement. Lastly, she argued that even if she and Robert had reached a settlement, SAS had separate claims that had not yet been resolved. Holly "requested that the mediation be reconvened to address all disputes." She also indicated that her Response was "submitted within the context of mediation" and that she "reserve[d] all rights as to whether the issues raised herein are subject to arbitration."

In response Robert submitted an "Arbitration Memorandum Regarding Settlement Existence, Scope, Noncompliance, and Enforcement" (Arbitration Memorandum) to both Holly and Sanders. Robert argued that the parties had agreed to a settlement when they signed the Proposal, that Holly had all the information she needed to make an informed decision regarding settlement, and that SAS's claims against Robert, the trust, and Mountain House, LLC had been resolved. Robert attached an accounting, which disclosed payments made for repair and renovation of the Mountain House and legal fees related to the ongoing litigation.

After both documents had been submitted to Sanders, the parties exchanged a series of emails discussing the nature of their dispute. Robert sought to clarify that "this is an arbitration at this point" and that the parties were no longer "mediating at this time." Holly stated that she did "not agree with Robert's position but would like to see all issues resolved to avoid further litigation expense" and that the parties would "have

to agree to disagree on this point." In response to a question about subpoenas, Robert stated that he was "under the impression that [the parties were] waiting for . . . Sanders to issue a decision as an arbitrator under paragraph 11 of the Mediator's Proposal." Holly replied that she wanted to take Robert's deposition, stating, "I do not have any objection to rescheduling the depo until after [Sanders] has reviewed the matter." In response Robert again noted, "We are awaiting . . . [Sanders's] decision regarding the existence and scope of the settlement that was reached at the December 1, 2015, mediation." And Holly again confirmed that she was anticipating that Sanders would issue a decision on the issues she had raised: "[P]lease confirm whether Robert is willing to agree to reschedule the deposition until after [Sanders] has issued his decision."

Sanders issued a decision in February 2016. He stated that the parties had identified disputes to be resolved "[p]ursuant to paragraph 11" of the Proposal. He concluded that Holly had settled her claims against Robert when she had executed the Proposal and that she "must comply with [its] terms and conditions." He further concluded that the Proposal had settled SAS's claims against Robert but not its claims against Mountain House, LLC. Sanders directed the parties to "execute a mutual release which is consistent with this decision."

### D. Motions To Continue And Enforce

In March 2016 Holly filed a motion to continue the trial scheduled in the superior court. She again contended that the December 2015 mediation had not resulted in a binding settlement; in the alternative, she argued that fraud and fiduciary misconduct on Robert's part vitiated her consent to any settlement that may have occurred. Holly denied that the parties had already submitted these issues to arbitration, characterizing her earlier Response as a request for "assistance" presented to Sanders "in the context of the mediation." She sought a continuance to investigate "facts surrounding the Trustee's various breaches of fiduciary duty." In response Robert filed a motion to

enforce, arguing that the parties had already submitted these issues to arbitration and that Sanders's decision directing Holly to comply with the terms of the Proposal constituted a binding arbitration award. In the alternative, he argued that the court should enforce the terms of the Proposal even if it concluded that Sanders's decision was not the product of arbitration. Robert also argued that Holly had violated the trust's penalty clause by filing her motion to continue.

The superior court issued an order denying Holly's motion to continue and granting in part Robert's motion to enforce. The court explained that Holly had asked Sanders to determine whether the Proposal constituted a binding settlement agreement and that she now sought to overturn both Sanders's arbitration decision and the underlying settlement agreement. The court concluded that the Proposal was "not a proposal" but rather a settlement agreement; the court reasoned that "given the wording of the document, the presence of Holly's attorney, and her signature," it was a "near certainty" that Holly understood she was settling her claims. The court further concluded that Holly's reliance on Robert's diligence in reporting trust costs was not "justifiable": Holly "knew the trust had costs, knew that she did not know the precise value of the costs, and knew Robert had a duty to disclose the costs but had not done so." Therefore, Holly's fraud claim could not vitiate her consent to the terms of the Proposal — including paragraph 11, the provision providing for arbitration of subsequent disputes.

In light of these conclusions, the court denied Holly's motion to continue and granted Robert's motion to enforce "in so far as it [sought] enforcement of the arbitration decision." The court noted, however, that "the remedy sought in Holly's motion" was "a new trial date and further discovery" rather than nullification of any trust provisions. Accordingly, the court denied Robert's motion as it related to the penalty clause. Having concluded that the parties had settled all claims, the court entered final judgment.

### E. Post-Judgment Motions And Attorney's Fees

Robert subsequently moved for attorney's fees under Rule 82. Holly opposed and petitioned the superior court to review Robert's compensation and attorney's fees under AS 13.36.055. The court denied Holly's petition on the basis that she had "settled the case without insisting that [Robert] provide more of an accounting than he already had before and during the course of the litigation." Concluding that Holly's post-mediation litigation conduct had been vexatious, the court awarded enhanced attorney's fees to Robert.[4]

## III. DISCUSSION

Holly appeals the superior court's enforcement of Sanders's arbitration decision, the court's denial of her petition to review Robert's compensation and attorney's fees, and the court's award of attorney's fees to Robert. Robert cross-appeals the superior court's ruling that Holly did not violate the trust's penalty clause, but asks that we address his cross-appeal only if we do not affirm the superior court's enforcement of the arbitration decision.

### A. The Superior Court Did Not Err By Confirming Sanders's Decision.

Holly challenges the superior court's conclusion that Sanders's February 2016 decision constituted an enforceable arbitration award.[5] She contends that

---

[4]   *See* Alaska R. Civ. P. 82(b)(3).

[5]   Holly frames the issue differently and incorrectly, arguing that the superior court erred in finding the Proposal to be an enforceable settlement agreement. But as Robert points out, the court did not just find the Proposal to be an enforceable settlement agreement; "[r]ather, the superior court enforced *an arbitration decision* that determined" that the Proposal was an enforceable settlement agreement. (Emphasis added.) Thus, the pertinent question is not whether the Proposal was enforceable but rather whether the superior court properly confirmed Sanders's determination that the Proposal was enforceable.

the question Sanders addressed — whether the Proposal was a binding settlement agreement — cannot be resolved by an arbitrator. Robert responds that Holly challenged Sanders's authority "only after Sanders ruled against her" and that Holly therefore waived this challenge.

We have not previously addressed whether a party waives an attack on an arbitrator's authority to decide an issue by submitting the issue to the arbitrator for decision. However, other jurisdictions have answered this question in the affirmative.[6] A recent Illinois appellate decision, *Advocate Financial Group v. Poulos*, is representative.[7] The appellants in that case challenged an arbitration award on the ground that the contract containing the arbitration provision had expired before the arbitration commenced.[8] The court concluded that the appellants had forfeited this argument.[9] It noted that the appellants had been "notified in writing that plaintiff intended to proceed to arbitration under the agreement" but had neither moved the court

---

[6] *See Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980); *Paige Elec. Co. v. Davis & Feder, P.A.*, 231 So. 3d 201, 205-06 (Miss. App. 2017) ("[P]articipation in arbitration proceedings waives the right to object to an arbitrator's authority."), *cert. denied*, 229 So. 3d 122 (Miss. 2017); *Adams v. Barr*, 182 A.3d 1173, 1179 (Vt. 2018) ("[A]t some point prior to the actual arbitration hearing a party who participates in an arbitration proceeding without objecting to the validity of the arbitration agreement may waive the ability to make that objection."); *Welty v. Brady*, 123 P.3d 920, 928 (Wyo. 2005) ("[W]hen an issue appears to be submitted to arbitration by the parties and there is no objection to the arbitrator's consideration of a particular issue, a later claim the arbitrator exceeded its authority by considering that claim is waived.").

[7] 8 N.E.3d 598 (Ill. App. 2014).

[8] *Id.* at 609.

[9] *Id.*

to stay the arbitration proceeding nor filed any motion before the arbitrator arguing that the claims were not subject to arbitration.[10] Instead, having "unilaterally decided that their position was correct," the appellants had "made a calculated decision . . . to do nothing in response" to the notice of arbitration.[11] The court thus held that the appellants had failed to "object in a timely manner."[12]

The waiver rule adopted in Illinois and other jurisdictions is compatible with the relevant provisions of Alaska's Revised Uniform Arbitration Act.[13] Alaska Statute 09.43.500 indicates that a court must vacate an arbitration award if there was no agreement to arbitrate — but only if the appellant "rais[ed] the objection under AS 09.43.420(c) not later than the beginning of the arbitration hearing."[14] Furthermore, while the Act provides that "[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate,"[15] AS 09.43.340 indicates that the party disputing the existence of an enforceable agreement to arbitrate is responsible for raising the issue in court.[16] These provisions are consistent with a

---

[10] *Id.* at 609-10.

[11] *Id.* at 610.

[12] *Id.* at 609; *see also id.* ("A party cannot 'sit silent, wait until an adverse award [is] issued, and then first argue that the arbitrator did not have the authority even to hear the claim.'" (alteration in original) (quoting *First Health Grp. Corp. v. Ruddick*, 911 N.E.2d 1201, 1213 (Ill. App. 2009))).

[13] AS 09.43.300-.595.

[14] AS 09.43.500(a)(5); *see* AS 09.43.420(c) (providing that a party to an arbitration proceeding may object to "lack or insufficiency of notice").

[15] AS 09.43.330(c).

[16] *See* AS 09.43.340(b) ("On application of a person alleging that an (continued...)

conclusion that a party objecting to an arbitrator's authority bears the burden of presenting a timely objection in arbitration or in court — and that failure to do so may result in forfeiture of the objection on appeal.

In light of both persuasive authority from other jurisdictions and Alaska statutes governing arbitration proceedings, we hold that a party to arbitration can waive objections to the arbitrator's authority by failing to raise them in a timely manner. We next address whether this rule bars Holly from asserting on appeal that Sanders could not resolve the parties' dispute over the enforceability of the Proposal.

There is no dispute that both parties signed the Proposal, paragraph 11 of which states that "[a]ny disputes concerning [the Proposal's] terms or the execution of these terms . . . shall be resolved finally and completely by Eric Sanders." Thereafter, Holly invoked this mechanism — albeit implicitly — when she requested that Sanders determine whether a valid settlement agreement existed between her and Robert and whether her signature on the Proposal was induced by fraud. She stated that she "reserve[d] all rights" as to whether these two issues were "subject to arbitration," and, in a subsequent filing, she stated that she "view[ed] the . . . process as part of the mediation." However, she did not affirmatively state that resolution of either issue would exceed Sanders's authority. And Robert raised the same issues in his Arbitration Memorandum, which he submitted to Sanders and served upon Holly. This document referred to Sanders as an "Arbitrator," and, in correspondence exchanged following submission of the Arbitration Memorandum, Robert explicitly asserted that the parties were engaged in "an arbitration . . . under paragraph 11 of the . . . Proposal."

---

[16](...continued)
arbitration proceeding has been initiated or threatened but that there is not an agreement to arbitrate, the court shall proceed summarily to decide the issue.").

Upon learning that Robert believed arbitration proceedings had been initiated, Holly could have informed Sanders of her disagreement. In the alternative, she could have applied to the superior court, "alleging that an arbitration proceeding [had] been initiated or threatened but that there [was] not an agreement to arbitrate."[17] The court would then have "summarily . . . decide[d] the issue."[18] But rather than take any action to address the dispute, Holly elected to await Sanders's decision on whether the Proposal was an enforceable settlement agreement, while "agree[ing] to disagree" with Robert on the issue whether that decision would constitute a binding arbitration award. Like the appellants in *Advocate Financial Group*, Holly was aware that Sanders was likely to issue an arbitration decision on the issues that had been submitted to him, but she "necessarily made a calculated decision . . . to do nothing."[19] She therefore forfeited her argument that Sanders exceeded his authority when he concluded that the Proposal was a binding and enforceable settlement agreement.

Because we hold that Holly failed to assert her objections to the arbitrator's authority in a timely manner, we need only decide whether the superior court erred by confirming Sanders's arbitration award. We review a superior court's decision confirming an arbitration award de novo.[20] "An arbitrator's decision is accorded great deference," which "extends to both the arbitrator's factual findings and the arbitrator's interpretation and application of the law."[21]

---

[17] *Id.*

[18] *Id.*

[19] *Advocate Fin. Grp. v. Poulos*, 8 N.E.3d 598, 609-10 (Ill. App. 2014).

[20] *McAlpine v. Priddle*, 321 P.3d 345, 348 (Alaska 2014).

[21] *State v. Alaska Pub. Emps. Ass'n*, 199 P.3d 1161, 1162 (Alaska 2008); *see*

(continued...)

Here, the parties signed the Proposal following a lengthy mediation session. The Proposal outlines the terms of an agreement and states that "[t]he parties . . . have reached an agreement to the settlement of all claims of all parties based upon discussions and negotiations in [the] mediation." Holly was represented by counsel during the mediation, and her counsel signed the Proposal. And the mediation and settlement process was overseen by neutral party Sanders. Accordingly, we conclude that there is adequate record support for Sanders's conclusion that the Proposal was a valid, enforceable settlement agreement.

We reach the same conclusion regarding Holly's claim that Robert fraudulently induced her acquiescence to the Proposal's terms. Holly argued to Sanders that Robert "withheld material information from [her] prior to and during the mediation." But in order to prove that the parties' agreement was voidable, Holly would need to establish that she justifiably relied on Robert's representations concerning the trust.[22] Holly was aware at the time she signed the Proposal that Robert had incurred costs while managing the trust and that Robert had not provided all the information she wanted regarding trust expenditures.[23] She nonetheless participated in the mediation and agreed to settle the dispute. Therefore, "the course of dealings between the parties before and

---

[21](...continued)
*also Moore v. Olson*, 351 P.3d 1066, 1071 (Alaska 2015) ("An 'arbitrator's findings of both fact and law . . . receive great deference.' " (omission in original) (quoting *OK Lumber Co. v. Alaska R.R. Corp.*, 123 P.3d 1076, 1078 (Alaska 2005))).

[22]     *See* RESTATEMENT (SECOND) OF CONTRACTS § 164 (AM. LAW INST. 1981).

[23]     *Indus. Commercial Elec., Inc. v. McLees*, 101 P.3d 593, 601 (Alaska 2004) ("Whether reliance is justified in a given case seems to us more likely to turn on the course of dealings between the parties before and during the dispute.").

during the dispute" adequately supports Sanders's conclusion that Holly's decision to settle her claims was not procured through fraud.[24]

The record thus supports Sanders's determination that the parties had settled their claims and that Holly must comply with the Proposal. The superior court did not err when it confirmed Sanders's arbitration decision.[25]

## B. The Superior Court Did Not Err By Refusing To Consider Holly's Petition Regarding Trustee Compensation And Attorney's Fees.

Holly argues that the superior court should have considered her petition under AS 13.36.055 for review of Robert's compensation and attorney's fees before awarding him enhanced attorney's fees. Robert responds that the court's earlier entry of final judgment precluded Holly's petition for a review.

We conclude that the superior court did not err by refusing to consider Holly's petition. By the time Holly filed her petition, the superior court had already issued a final judgment "[c]onfirming and enforcing" Sanders's arbitration award, which in turn had confirmed and enforced the parties' settlement agreement, the Proposal.[26] The Proposal had "settle[d] . . . all claims of all parties," including the claims raised in the complaint. Thus, as the superior court explained in rejecting Holly's petition, "[t]his case [had] ended." Although the superior court may have had authority to consider

---

[24]     *Id.*

[25]     Further, because the Proposal settled "all claims of all parties," no claims remained to be decided at trial and there was no need for additional discovery. We thus reject Holly's argument that the superior court erred in denying her motion to continue the trial.

[26]     *See Richard v. Boggs*, 162 P.3d 629, 633 (Alaska 2007) ("A 'final' judgment is one that disposes of the entire case and ends the litigation on the merits." (quoting *Mattfield v. Mattfield*, 133 P.3d 667, 673 (Alaska 2006))).

Holly's petition in the present proceeding,[27] Holly does not explain why it was an abuse of discretion for the court to instead require that she bring her petition "in a separate proceeding."[28]

## C. The Superior Court Did Not Abuse Its Discretion By Awarding Enhanced Attorney's Fees For The Post-Mediation Litigation.

Holly argues that the superior court erred by awarding Robert enhanced attorney's fees under Rule 82. She contends that Robert was not the "prevailing party" in the suit and was thus not entitled to recover a percentage of reasonable attorney's fees. In the alternative, she argues that the court erred by characterizing her litigation conduct as "vexatious."

Rule 82 includes a schedule of default fee awards to be granted to the "prevailing party" in a civil suit.[29] However, a court may deviate from the default schedule upon consideration of factors outlined in subsection (b)(3), including whether either party engaged in "vexatious or bad faith conduct" during litigation.[30] "[I]n general, a trial court has broad discretion to award Rule 82 attorney's fees in amounts exceeding those prescribed by the schedule of the rule, so long as the court specifies in

---

[27]     *See Marshall v. First Nat'l Bank Alaska*, 97 P.3d 830, 836 (Alaska 2004) (approving, in dictum, beneficiary's filing of AS 13.36.055 petition for review following judgment on beneficiary's petition for substitution of trustee, explaining that this "was far more efficient than commencing a new proceeding"). We do not decide whether the reasoning in *Marshall* — a probate matter — would apply in the present case.

[28]     The superior court left open the question whether the present case would have "res judicata effect" on any subsequent litigation involving AS 13.36.055. We likewise decline to address the question as it is not ripe for review.

[29]     *See* Alaska R. Civ. P. 82(b).

[30]     Alaska R. Civ. P. 82(b)(3)(G).

the record its reasons for departing from the schedule."[31] "We review awards of attorney's fees for abuse of discretion and will reverse 'if the award is arbitrary, capricious, manifestly unreasonable, or improperly motivated.' "[32] "The determination of which party is the prevailing party is . . . subject to the trial court's discretion and is reviewable only for abuse of discretion."[33]

The prevailing party in a civil suit is the party who "prevails on the main issues."[34] Here, as the superior court noted, the parties' litigation can be divided into two phases: the first "preceded the expected execution of a settlement agreement and dismissal of the litigation," while the second "followed [Holly's] refusal to abide by the mediation agreement." The court based its award of enhanced attorney's fees on the costs incurred during the second, post-mediation phase. Holly argues that she should be "deemed the prevailing party" in the post-mediation litigation because she received "significant information . . . concerning Robert's actions and expenditures as Trustee" over the course of the proceedings.[35] However, Holly's suggestion that she "achieve[d] the goals of [her] litigation" is unconvincing.[36] Holly first unsuccessfully attempted to dispute the finality of the parties' settlement. She then sought to proceed to trial, at

---

[31]   *Kollander v. Kollander*, 400 P.3d 91, 95 (Alaska 2017) (quoting *Kollander v. Kollander*, 322 P.3d 897, 907 (Alaska 2014)).

[32]   *Id.* (quoting *Roderer v. Dash*, 233 P.3d 1101, 1106 (Alaska 2010)).

[33]   *Fink v. Municipality of Anchorage*, 379 P.3d 183, 188 (Alaska 2016).

[34]   *Kollander*, 400 P.3d at 97 (quoting *Alaska Constr. & Eng'g, Inc. v. Balzer Pac. Equip. Co.*, 130 P.3d 932, 935-36 (Alaska 2006)).

[35]   *See DeSalvo v. Bryant*, 42 P.3d 525, 530 (Alaska 2002) ("Even without formal judicial relief, many plaintiffs achieve the goals of their litigation.").

[36]   *Id.*

which point the superior court enforced Sanders's arbitration decision and ended the litigation. Robert prevailed at every stage of post-mediation litigation; accordingly, the superior court did not abuse its discretion in concluding that he was the prevailing party.

The superior court based its decision to enhance the attorney's fees award largely on one factor: the vexatious nature of Holly's post-mediation litigation. After signing the Proposal, Holly argued that it did not constitute a binding settlement agreement — a claim "soundly rejected" by Sanders. The superior court noted that Sanders had overseen the parties' mediation and was thus well-situated to "gauge [Holly's] understanding of the various counterproposals and participation in the discussions that led to the agreement." After Sanders issued his decision, Holly "ignored the result that she did not like" and attempted to "restart the trial process." While Holly contends that "the record evidences that [she] litigated reasonably and in good faith," she neither cites evidence to support this contention nor disputes the evidence the superior court relied upon in arriving at its decision to enhance attorney's fees. Because the record adequately supports the superior court's rationale, we conclude that the decision to enhance attorney's fees was not an abuse of discretion.[37]

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the superior court.

---

[37] Holly also argues that Rule 82 is inapplicable to suits in which a beneficiary seeks construction and enforcement of a trust document. We have not previously articulated such a rule, and the authorities Holly cites do not support this proposition. *See, e.g.*, *Barber v. Barber*, 915 P.2d 1204, 1209-10 (Alaska 1996) (holding that it was error to award attorney's fees to trustee where "trustee was [not] sued for breach of fiduciary duty" but was instead "a neutral party, seeking to establish in advance that a particular course of action was . . . in the best interests of all the beneficiaries"). We thus decline to address Holly's argument.